IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EMILY C.M.,[1]
    Plaintiff,

v.   Civil No. 3:21-cv-00225 (JAG)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act ("Act"). At the time of her application date, Plaintiff was forty years old and previously worked as an auction support specialist for an automobile retailer and financial aid counselor. (R. at 41-42, 159, 210.) She alleges she is unable to work due to myofascial pain syndrome, fibromyalgia, and ulnar neuropathy. (R. at 208-09.)

On November 17, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ's decision is not supported by substantial evidence. (Pl.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 24 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 23) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 25) be DENIED, and the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on December 4, 2019, alleging disability beginning August 1, 2015. (R. at 159.) On April 14, 2020, the SSA denied Plaintiff's claim (R. at 88) and again upon reconsideration on June 9, 2020. (R. at 100.) Plaintiff requested a hearing before an ALJ, and a hearing was held telephonically on October 30, 2020. (R. at 35-49, 107.) On November 17, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 15-27.) Plaintiff requested review of the ALJ's decision, and on March 4, 2021, the SSA Appeals Council denied the request rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir.

---

Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's

3

five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, August 7, 2018, through her date last insured, September 30, 2019. (R. at 17.) At step two, the ALJ determined that Plaintiff had the following severe

impairments: cervical disc disease, migraine, and obesity pursuant to 20 C.F.R. § 404.1520(c) and Social Security Ruling ("SSR") 85-28. (R. at 17.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 21.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b), except that:

> [Plaintiff] is able to lift and/or carry 10 pounds on the dominant left side. She is able to occasionally stoop, kneel, crouch, crawl and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She must avoid overhead reaching and she is limited to no more than frequent reaching in every other direction bilaterally. [Plaintiff] is limited to frequent handling (gross manipulation) on the right and occasional fingering (fine manipulation), feeling, and handling on the left. She must avoid exposure to vibration, dusts, fumes and pulmonary irritants, as well as hazards such as unprotected heights and moving mechanical machinery. She should not be exposed to more than moderate noise level. Moderate noise is defined as the noise found in a business office where keyboarding occurs, noise in a department store, noise in a grocery store, and the noise found in light traffic.

(R. at 21.)

The ALJ explained that he determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 21.) Based on these residual functional capacity findings, the ALJ proceeded to step four of the analysis. Based on the testimony of an impartial vocational expert, the ALJ concluded that Plaintiff could perform past relevant work as a financial aid counselor. (R. at 26.) The ALJ explained that Plaintiff could perform this job "as actually and generally performed" because it was sedentary, skilled, and "did not require the performance of

work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR 404.1565)." (R. at 26.) Accordingly, the ALJ found Plaintiff not disabled from August 7, 2018 through September 30, 2019. (R. at 27.)

## IV. ANALYSIS

Plaintiff argues that the ALJ's decision must be remanded because it is not supported by substantial evidence. (Pl.'s Mem. at 8.) More specifically, Plaintiff asserts that the ALJ failed to address the medical opinion evidence of Aaron Jones, M.D. ("Dr. Jones") and "instead relie[d] on the opinions of the non-examining consultants." (Pl.'s Mem. at 10-11.) Defendant responds that the ALJ "correctly evaluated the medical opinion evidence as part of his [residual functional capacity] assessment and pointed to substantial evidence in the record to support his findings." (Def.'s Mot. Summ. J. 17 (ECF No. 25) ("Def.'s Mem.").) Defendant adds that Dr. Jones's opinions "were rendered after Plaintiff's date last insured," and "concern a period outside the relevant period of review." (Def.'s Mem. at 17.) For the reasons that follow, this Court finds that the ALJ erred in failing to consider the opinions of Dr. Jones.

### A. The ALJ Erred When Evaluating the Medical Opinion Evidence.

*1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.*

During the sequential analysis, the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities. This requires the ALJ to analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1520c. When the record contains several medical opinions, the ALJ will not assign

6

any weight, or defer to an opinion, but instead, the ALJ will articulate the persuasiveness of the opinions. § 404.1520c(a).

Historically, for claims filed before March 27, 2017, the ALJ gave a treating medical source's opinion controlling weight, if medically acceptable clinical and laboratory diagnostic techniques supported it and it comported with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p, 1996 SSR LEXIS 9. However, for claims filed on or after March 27, 2017, revised regulations define what constitutes a medical opinion and how the medical opinions are evaluated. 20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2); *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384 n.8 (4th Cir. 2021). In this matter, Plaintiff filed for disability insurance benefits after March 27, 2017, and, therefore, the revised regulations apply. (R. at 159.)

The revised regulations define a medical opinion as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in the ability to perform physical, mental, or other demands of work activity or adapt to environmental conditions. § 404.1513(a)(2). According to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." § 404.1520c(a).

Moreover, when the ALJ articulates the consideration of a medical source, he need not individually discuss the consideration of each medical opinion from a single medical source. § 404.1520c(b)(1). Rather, when a medical source provides multiple medical opinions, the ALJ will articulate the persuasiveness of those medical opinions together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5), as appropriate. § 404.1520c(b)(1). These factors

include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c). Among the aforementioned factors, supportability and consistency carry the greatest import. § 404.1520c(b)(2). Importantly, when presented with multiple medical opinions from a medical source, the ALJ need not discuss each factor in determining the persuasiveness of a medical source, but only how the ALJ considered the supportability and consistency of a medical source's medical opinions, in relation to the other objective medical evidence. § 404.1520c(b)(2).

### 2. *Plaintiff's Treatment with Dr. Jones.*

Dr. Jones, a board-certified and licensed physiatrist, began treating Plaintiff on January 9, 2019, for complaints of pain in Plaintiff's neck, left shoulder, left hand, and bilateral wrists. (R. at 816-17, 822-23.) Plaintiff reported numbness, cramping, and weakness in her left hand, with pain radiating from the left arm through her left palm and thumb. (R. at 823.) Plaintiff told Dr. Jones that she had not had physical therapy since her surgery in August 2018 but used prescribed and over-the-counter pain medications. (R. at 823.) She complained of painful spasms that woke her up at night, but she took medication to help her sleep. (R. at 823.) In addition to medication, Plaintiff reported symptom relief with heat and better positioning. (R. at 823.) On examination, Dr. Jones noted that Plaintiff was tender to palpation in the left cervical paraspinals, upper trapezoid, and rhomboid area, and had decreased sensation to her left hand. (R. at 823.) She maintained normal strength and sensation in her bilateral lower extremities, a negative Spurling test, and walked with a normal gait. (R. at 823.)

Dr. Jones examined Plaintiff's imaging, most recently her cervical MRI from October 10, 2018, which showed "[n]o unusual postoperative findings," loss of disc space height at the C5-C6 level, "[b]road-based posterior disc bulge/protrusion with mild stenosis. No definite cord

compression. Mild left foramina stenosis. C6-C7: Mild loss of disc space height and signal with broad-based posterior disc bulge or minimal protrusion. Minimal/mild stenosis. No significant change. The spinal cord has normal signal throughout." (R. at 823-24.)

On follow-up in February 2019, Plaintiff reported that the paraervical trigger points "conferred 1 week of moderate relief" and reported that her pain is alleviated with medication. (R. at 813.) On exam, Plaintiff was found to have ongoing numbness in her left hand and decreased sensation to light touch in her medial hands and forearm, but no muscle spasms, and was alert and oriented, with no lower extremity edema and unlabored breathing. (R. at 813-14.) Plaintiff exhibited full motor strength in her bilateral upper extremities and walked with a non-antalgic gait. (R. at 814.) Although she appeared to be pleasant and conversant, Plaintiff reported that she had a mild depressed mood and found it difficult to sleep due to pain. (R. at 813.) She continued to be prescribed gabapentin and diltiazem, in addition to over-the-counter pain relief medications, and underwent an injection at each trigger point to alleviate pain. (R. at 814.) On June 28, 2019, Plaintiff again treated with Dr. Jones, who found that the injections from February "did not drastically improve her pain symptoms (15%-20%)" and that she stopped taking her prescribed medication because it "caused some sedation side effects . . . ." (R. at 797.) Plaintiff continued to report the same symptoms as before and was not given further injections "for lack of significant treatment effect." (R. at 798.)

In August and September 2019, Plaintiff reported decreased pain with massage treatment and some improvement with medication. (R. at 778, 790.) At both visits, she exhibited diminished strength (4-5/5) in both upper extremities. (R. at 779, 791.) At her August 2019 appointment, she described the pain as "sharp, achy, and constant," which became worse after physical activity. (R. at 790.) She denied any new numbness or weakness and was encouraged to ice massage in addition

to monitoring for sedative side effects of her medication. (R. at 790-91.) In September 2019, Dr. Jones noted that Plaintiff had multiple tender points at the medial scapulae and limited range of motion. (R. at 779.) He recommended that she try a different medication and, if that did not provide relief, to consider injections again. (R. at 779.) Plaintiff continued to report sedative side effects of her medication and feeling "loopy," but otherwise reported improvement in her headache symptoms. (R. at 778-79.)

      3.  *Dr. Jones's Medical Opinions.*

Dr. Jones completed an arthritis medical source statement on January 2, 2020 ("January 2020 Assessment") and a cervical spine medical source statement on September 1, 2020 ("September 2020 Assessment") in which he provided his medical opinions about Plaintiff's ability to do work-related activities. (R. at 826-29, 2027-2031.) In both assessments, he noted that he treated Plaintiff since January 9, 2019, and that her prognosis was "poor" and/or "guarded." (R. at 826, 2027.)

In the January 2020 Assessment, Dr. Jones noted Plaintiff's diagnoses of "late effects cervical stenosis," left elbow epicondylitis, and identified her symptoms as "chronic neck and left arm pain, associated numbness and weakness left hand," with "8/10 in severity" of pain. (R. at 826.) Dr. Jones endorsed the objective signs of Plaintiff's impairments as being reduced range of motion in the left elbow, reduced grip strength, sensory changes, impaired sleep, tenderness, trigger points, muscle spasm, and muscle weakness, noting that emotional factors "contribute to the severity" of Plaintiff's symptoms and functional limitations. (R. at 826.) He elaborated that Plaintiff suffered psychological factors affecting her physical condition and depression, noted that her medication could cause sedation and dizziness, and that her impairments lasted or can be

10

expected to last at least twelve months. (R. at 827.)

Dr. Jones was then asked to evaluate Plaintiff's functional limitations if she "were placed in a *competitive work situation*." (R. at 827) (emphasis in original.) Dr. Jones estimated that Plaintiff could walk three city blocks without rest or severe pain, but also sit and/or stand for "about 2 hours" total in an eight-hour workday. (R. at 827.) He estimated that she would need to take unscheduled breaks every day during the workday for about thirty minutes but would not need to have periods of walking around during the workday. (R. at 827-28.) He added that she could frequently[3] lift and carry less than ten pounds, occasionally[4] ten pounds, rarely[5] twenty pounds, and never fifty pounds. (R. at 828.) She could occasionally twist and climb stairs, rarely stoop/bend or crouch/squat, and never climb ladders. (R. at 828.) Dr. Jones added that Plaintiff had "significant limitations with reaching, handling or fingering," and endorsed that she could use her left hand, fingers, and arms to twist, manipulate, and reach for only twenty-five percent of the workday. (R. at 829.) Dr. Jones opined that Plaintiff would be "off task" twenty-five percent or more of the time due to pain affecting her attention and concentration on simple work tasks and was capable of low stress work. (R. at 829.) Her impairments were likely to produce "good days" and "bad days," and she would likely be absent from work as a result of her impairments "more than four days per month." (R. at 829.)

In the September 2020 Assessment, Dr. Jones discussed Plaintiff's cervical stenosis, status post C4-5 anterior cervical discectomy and fusion surgery, chronic migraines, and myofascial pain, noting that she had chronic pain/paresthesia and severe pain in her left neck and shoulder, with

---

[3] Frequently is defined as 34% to 66% of an 8-hour working day. (R. at 828.)

[4] Occasionally is defined as 6% to 33% of an 8-hour working day. (R. at 828.)

[5] Rarely is defined as 1% to 5% of an 8-hour working day. (R. at 828.)

11

associated numbness in her left upper extremity. (R. at 2027.) Dr. Jones endorsed the following symptoms: tenderness, crepitus, muscle spasm, muscle weakness, chronic fatigue, sensory changes, impaired sleep, motor loss, dropping items, and reduced grip strength. (R. at 2027.) Finding that she had "significant limitation of motion," Dr. Jones indicated that Plaintiff's cervical range was limited to seventy-five percent extension and left rotation, but twenty-five percent left lateral bending. (R. at 2027.) However, he noted that she had full flexion, right rotation, and right lateral bonding. (R. at 2027.) With regards to her headaches, he endorsed her pain as being 9/10 in severity, four times per week, each lasting six to eight hours, with associated nausea, photosensitivity, inability to concentrate, impaired sleep, visual disturbances, and mood changes. (R. at 2028.) Dr. Jones specified that Plaintiff's headaches are alleviated by medication and Botox injections, lying down, taking medication, and being in a quiet, dark place. (R. at 2028.)

Dr. Jones proceeded to answer questions again estimating Plaintiff's functional limitations. (R. at 2029.) He noted that she could walk a city block without rest or severe pain and estimated that she could sit and/or stand between thirty minutes and an hour at a time and stand or walk less than two hours in an eight-hour workday. (R. at 2029.) Dr. Jones opined that Plaintiff needed to have a job which allowed her to walk around and shift positions at will from sitting, standing, or walking. (R. at 2029.) Adding that she must walk every fifteen minutes for five minutes each time, and that she needed to lie down for three to four unscheduled breaks during a workday for fifteen minutes at a time. (R. at 2029.) Dr. Jones's assessment of Plaintiff's ability to lift and carry remained the same from the January 2020 Assessment. (Compare R. at 2029-30 and R. at 828.) However, he noted that Plaintiff could occasionally climb stairs, rarely twist, stoop, crouch/squat, and never climb ladders. (R. at 2030.) Dr. Jones found that Plaintiff could use her left hands, fingers, and arms for fifty percent of the time during an eight hour workday to grasp, turn,

manipulate, and reach. (R. at 2030.) Dr. Jones again opined that Plaintiff would be off-task for twenty-five percent or more of a workday, was capable of low stress work, had "good days" and "bad days" and would be absent "about four days per month." (R. at 2031.)

    *4. Analysis of the ALJ's Assessment of the Opinions of Dr. Jones.*

In his decision, the ALJ summarized Dr. Jones's treatment records in addition to the other medical and non-medical evidence. (R. at 21-26.) He added:

> Additionally, any opinions, findings, and statements regarding [Plaintiff's] limitations after the date last insured (such as Dr. Jones' January 2, 2020 and September 1, 2020 opinions in exhibits 8F and 12F) are found to be conclusory and less persuasive as they concern a period outside the purview of the undersigned.

(R. at 26.)

To show that Dr. Jones's opinions are supported by the record, Plaintiff claims that the ALJ should have considered his medical evaluations after her date last insured. Specifically, Plaintiff argues that the ALJ erred when he "ignore[d] the opinions of Dr. Jones" and relied on non-examining consultants when forming the residual functional capacity. (Pl.'s Mem. at 10.) According to Plaintiff, Dr. Jones's opinions "deserve great weight" and that the consultative examiners' "brief review of records is not substantial evidence compared to the multiple visits – and accompanying physical exams and review of objective imaging – [Plaintiff] had with Dr. Jones." (Pl.'s Mem. at 10.)

For a claimant to establish eligibility for disability insurance benefits, she must demonstrate two essential elements: (1) a disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A); and (2) a disability at the time the claimant has disability insurance

13

status. *Id.* § 423(a)(1)(A); 20 C.F.R. § 404.131(a). Thus, a claimant must establish the presence of a disability prior to the last day of her disability insurance status. *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).

Although a claimant for disability insurance benefits must establish the presence of a disability prior to her last date insured, medical evidence produced after the date last insured is generally admissible if such evidence "permits an inference of linkage with the claimant's pre-[date last insured] condition." *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 341 (4th Cir. 2012). Indeed, the Fourth Circuit noted in *Bird* that often the "most cogent proof" of a claimant's pre-date last insured disability comes from retrospective consideration of subsequent medical records. *Id.* (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). Subsequent medical evidence need not include a retrospective diagnosis so long as the treatment related to the claimant's "history of impairments." *Id.* Additionally, retrospective medical evidence "is especially appropriate when corroborated by lay evidence," including testimony of a claimant about her pre-date last insured condition. *Id.* at 342.

Plaintiff claims her disability began on August 7, 2018, due to myofascial pain syndrome, fibromyalgia, and ulnar neuropathy. (R. at 159-62, 208, 36 (citing amended alleged onset date).) Under the SSA regulations, Plaintiff's last date insured for purposes of disability insurance benefits was September 30, 2019. (R. at 204.) Therefore, the relevant period is from August 7, 2018 to September 30, 2019. As summarized above and in the ALJ's decision, Dr. Jones treated Plaintiff during the relevant period (from January 9, 2019 to September 26, 2019), and noted as such in the January 2020 Assessment and the September 2020 Assessment. While the decision of the ALJ focused predominantly on Plaintiff's medical care during the relevant period, which included Dr. Jones's treatment records, it did not consider Dr. Jones's medical opinions rendered roughly three

months (i.e., the January 2020 Assessment) and one year (i.e., the September 2020 Assessment) after her date last insured.

Under the Fourth Circuit's decision in *Bird*, the ALJ is obligated to consider medical evidence after the date last insured as long as "that evidence permits an inference of linkage with the claimant's pre-[date last insured] condition" and the failure to do so constitutes "an error of law."[6] 699 F.3d at 341-42. Further, the "possibility of such a linkage . . . may be enhanced by lay observations of a claimant's condition during the relevant time period," including testimony from the claimant herself. *Id.* However, the medical opinions must not be dated "long after" the date last insured or be contradicted by other opinions from the relevant period to permit an inference of linkage. *Brown v. Astrue*, Civil Action No. 8:11-03151-RBH-JDA, 2013 U.S. Dist. LEXIS 23896, 2013 WL 625599, at *15 (D.S.C. Jan. 31, 2013) (citations omitted).

Only a few months after *Bird*, the United States District Court for the District of South Carolina considered whether the Appeals Council erred in failing to assign little weight to medical opinion evidence supplied by a claimant following an ALJ's unfavorable decision. *Id.* at *5. Specifically, one of the two medical opinions supplied after the decision was afforded little weight by the Appeals Council because it was rendered "about one-and-a-half years after [the claimant's] insured status expired, indicated his treatment relationship with [claimant] was . . . less than the twelve months required to establish disability and not a significant longitudinal treatment relationship."[7] As a result, the claimant contended that the Appeals Council "failed to give logical

---

[6] The fact that the medical evidence may have been developed after the date last insured does not eliminate the need to consider such evidence if there is an inference of linkage to the disability claim. The Court noted that the medical evidence required to be considered in *Moore v. Finch* was produced 6 or 7 years after the date last insured. *Bird*, 699 F.3d at 341; *Moore*, 418 F.2d at 1226.

[7] The court also considered whether it was error for the Appeals Council to assign little weight to another provider's opinion, also provided after the last insured date, in which the provider

15

or legally sufficient reasons for disregarding [the two medical opinions], arguing that the Appeals Council unreasonably rejected the opinions based on the dates they were rendered and failed to adequately support its conclusion that the opinions were inconsistent with the medical evidence." *Id.* at *39. Thus, the court was tasked with reviewing whether the Appeals Council's decision to afford "little weight" to the targeted medical opinions was supported by substantial evidence. *Id.* Subsequently, the court determined that the Appeals Council sufficiently explained why it afforded the post-date last insured opinions little weight and, "[t]aking the Appeals Council's decision together with the relevant portions of the ALJ's opinion, the Court conclude[d] the Appeals Council's findings . . [were] supported by substantial evidence." *Id.* at *45. In a footnote, the court elaborated:

> As stated, evidence that post-dates a claimant's date last insured may be used in a disability determination if it relates to the claimant's condition prior to the date last insured. *See Bird*, 699 F.3d at 341; *Wooldridge*, 816 F.2d at 160. Here, the Appeals Council stated it rejected Drs. Wortham and Wadee's opinions in part because "they are dated after the date claimant was last insured" [R. 470], but the Appeals Council did not elaborate on whether the opinions were related to Plaintiff's condition prior to her date last insured. However, the Appeals Council also rejected the opinions because they were inconsistent with other record evidence, and as explained below, the Court concludes this finding is supported by substantial evidence. Accordingly, because the Appeals Council provided an alternate basis that is supported by substantial evidence, the Court has not addressed whether the Appeals Council properly rejected the opinions because they post-date [claimant's] date last insured.

*Id.* at *45-46 n.12.

This case is distinguished from *Brown*. In *Brown*, the court aptly noted that the Appeals Council provided reasoning other than the timing of the submitted opinions to support its reasoning

---

documented the claimant's "current functional limitations," and not the limitations at or before the claimant's date last insured. *Brown*, 2013 U.S. Dist. LEXIS 23896 at *40.

16

to afford little weight to the opinions. It noted that the opinions were "inconsistent with other record evidence." *Id.* However, in the present matter, the ALJ merely noted that the post-date last insured opinions from Dr. Jones were "conclusory and less persuasive as they concern a period outside the purview of the undersigned." (R. at 26.) No reason other than the date on which the opinions were submitted was given as a rationale by the ALJ when he declined to address the persuasiveness of the medical opinions of Dr. Jones.

The ALJ's failure to consider Dr. Jones's medical opinions requires remand to allow the retrospective consideration of the overlooked medical opinion evidence. The post-date last insured medical evidence clearly "permits an inference of linkage" by addressing the same complaints of severe pain in the same anatomical areas of the body producing, per Plaintiff's claims, the same disabling impairments. *Bird,* 699 F.3d at 341; (R. at 37-43.) Further, the corroborating lay testimony of Plaintiff further compels the conclusion that a full retrospective assessment of the date last insured medical evidence is necessary in assessing Plaintiff's disability claim. (*See* R. at 37-43.) The assessments rendered after September 30, 2019, may well provide the "most cogent proof" relating to Plaintiff's disability claim. *Bird*, 699 F.3d at 341. Moreover, it appears the ALJ declined to articulate any reason other than the timing of these opinions as a basis for his decision not to address them. *But See King v. Colvin*, 216 U.S. Dist. LEXIS 119445 (E.D. Va. Sep. 2, 2016) (finding "any error in the linkage determination [to be] harmless" because the ALJ "provided an additional reason for giving Dr. Nayak's opinion limited weight: that the opinion was inconsistent with Dr. Nayak's own findings and other medical evidence in the record.") The undersigned cannot find this to be harmless error. As a result, this Court recommends that remand is appropriate.

**B. The ALJ Did Not Err in his Assessment of the State Agency Examiners' Opinions.**

Plaintiff also argues that substantial evidence does not support the ALJ's assessment of the state agency examiners' medical opinions because "they merely reviewed the evidence in [Plaintiff's] file." (Pl.'s Mem. at 10.) According to Plaintiff, the state agency examiners did not "physically examine[] [Plaintiff] or observe[] her." (Pl.'s Mem. at 10.) Plaintiff appears to argue that a treating relationship is the determining factor in how the ALJ should have evaluated the medical opinion evidence, and *ipso facto*, the ALJ should have given "great weight" to Dr. Jones's opinions. (Pl.'s Mem. at 10.) Plaintiff is incorrect in this regard. As stated above, revised regulations govern the evaluation of medical opinion evidence for claims filed after March 27, 2017; prior regulations required an ALJ to give a treating medical source's opinion controlling weight if it was supported by acceptable clinical techniques and comported with other substantial evidence in the record. *See supra* Part IV.A.1. Under the regulations promulgated for claims filed after March 27, 2017, an ALJ need not "defer . . . to any medical opinion," but must evaluate medical opinions based on their supportability and consistency. 20 C.F.R. §§404.1520c(a).

In this case, the ALJ found, based on the entirety of the evidence presented, that the opinions of state agency consultants David Bristow, M.D. and Jack Hutcheson, M.D., were "generally consistent with the medical evidence of record" and supported "with explanations based on their reviews of the medical evidence." (R. at 25.) The ALJ noted that new evidence was received that was not reviewed by these consultants, but their opinions remained consistent with that new evidence. (R. at 25.) Despite finding these opinions persuasive, the ALJ found that the record "supports greater limitations, as indicated in the residual functional capacity statement." (R. at 25.) Therefore, the ALJ sufficiently articulated why these opinions were persuasive in

accordance with the regulations, which no longer require the ALJ to defer to a medical source based on its treating relationship with Plaintiff.

In her prayer for relief, Plaintiff asks this court to "find the opinions of her treating medical source, which is supported by his testimony, office visit notes, clinical findings, and objective imaging, persuasive and reject the non-examining consultants' opinions as lacking credibility, and to reverse the defendant's denial of benefits." (Pl.'s Mem. at 11.) However, it is not within the province of this Court to re-weigh evidence or find substantial evidence supporting a finding contrary to the Commissioner's. *See e.g., Estep v. Richardson*, 459 F.2d 1015, 1016-17 (4th Cir. 1972) (An ALJ's "decision, if supported by substantial evidence must be affirmed even though the reviewing court believes that substantial evidence also supports a contrary result."). It is not this Court's function to: (1) conduct a blank slate review of the evidence; (2) undertake to reweigh conflicting evidence; (3) make credibility determinations; or (4) substitute its judgment for that of the Commissioner. *Smith* 795 F.2d at 345; *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson*, 434 F.3d at 653. Therefore, the Court finds that the ALJ did not err in his assessment of the opinions of the state agency examiners.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 23) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 25) be DENIED, and the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: July 22, 2022